UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80347-CIV-RYSKAMP/VITUNAC

THOMAS H. SIDES,

      Plaintiffs,

v.

NEAL E. SIMMONS, RODNEY
N. GREEN, FRANK L. HOLMES,
RICHARD E. RODRIGUEZ, and
MONETA CAPITAL
CORPORATION, INC.,

      Defendants.
_____/

## ORDER PARTIALLY GRANTING DEFENDANT'S MOTIONS TO DISMISS

THIS CAUSE comes before the Court upon Defendant Holmes' Motion to Dismiss **[DE 27]**, filed on July 19, 2007. Plaintiff responded **[DE 37]** on August 6, 2007. Holmes replied **[DE 42]** on August 10, 2007. The motion is now fully briefed and ripe for adjudication.

**I.**    **Introduction**

This is a civil action brought by Plaintiff against Defendants alleging both state and federal causes of action stemming from Plaintiff's investment in securities offered by Defendants. Accordingly, this suit is brought pursuant to this Court's federal question jurisdiction. Venue is properly with this Court as all of the Defendants reside in the Southern District of Florida. The following facts are based on Plaintiff's allegations contained in his Complaint **[DE 1]**.

Rodney Green introduced Thomas Sides to Neal Simmons on March 1, 2005 during a meeting to discuss Sides' potential investment in a large development project in the Bahamas called the Lake Heights Development. Simmons and Green stated that all of the investments in the project

had been made through their corporation, Moneta Corp., and that they were seeking new investors to increase Moneta Corp.'s interest in the Lake Heights project and in a Bahamian company called MREIG.

During that March 1 meeting, Green and Simmons told Sides that the project entailed a 36 acre gated residential housing development overlooking Lake Kilarney. This project would include 118 single family homes and 68 condominium units. Green and Simmons told Sides that MREIG already owned the 36 acre site, which had been cleared, infrastructure construction and sales of lots and residences had already started. Green and Simmons stated that Moneta Corp. sought additional investors to raise money to finalize the project's infrastructure development. Accordingly, the investment was a "can't miss" for two reasons: first, there is a low supply and high demand for quality housing in the Bahamas; and second, there was already an insurance bond or title insurance on the property and therefore the investor's would be financially protected from loss. In addition to the above representations, all Defendants created and Green and Simmons provided Sides with a copy of a Moneta Offering Circular.

Plaintiff alleges that the circular contained material misrepresentations such as overstating the investment return, demand for housing, safety and profitability of the project, stating that infrastructure had already been constructed on the project site, and that the investment was secured and approved by the Bahamian government. Additionally, Plaintiff alleges that theCircular omitted material facts making it misleading such as: failing to list any risk factors relating to the property ownership, failing to disclose any details regarding agreements or contracts entered into pursuant to the project, Moneta Corp. and MREIG's default on several investor's promissory notes, failure to pay vendors, and information regarding how future investments would be used.

Sides claims that he relied on the statements Green and Simmons made at the May 1 meeting and the information presented in the circular. As a consequence, he invested a total of $250,000 in Moneta Corp. before the parties adjourned from the meeting.

Later, Sides received two letters signed by Simmons and dated March 2, 2007. The first letter guaranteed the return of his investment with a minimum return. The second letter guaranteed that Moneta Corp. had been issued title insurance for the project.

Months later, Sides began to have difficultly obtaining progress and financial information on the project from Defendants. In September 2005, Moneta Corp. defaulted on the loan Sides gave to the company as part of his investment. It was after this time that Sides discovered that Moneta Corp. and MREIG never owned the 36 acre site comprising the Lake Heights Development. Upon further investigation, Sides discovered that Defendants knew in late 2004 that they did not own the site and that obtaining title insurance was impossible. In fact, on September 23, 2005, Simmons wrote a letter agreeing that he did not own the site and made a new purchase offer.

Specific to Holmes, Plaintiff alleges that Holmes was an officer or director of Moneta Corp and MREIG before and when Plaintiff made his investment. Plaintiff alleges that Holmes prepared, compiled, reviewed and approved the information included in the circular with knowledge or recklessness as to the factual omissions and misrepresentations contained therein. Holmes intended to distribute the circular to the public to entice individuals to invest in the project. Specifically, Holmes intended that Plaintiff rely on the circular and as such enticed him into investing in the project.

Based on the above facts, Plaintiff alleges seven counts against the Defendants alleging violations of: the Securities Act of 1933 (Count I), the Securities and Exchange Act of 1934 Section

10(b) and Rule 10(b)(5) (Count II), the Florida Securities Laws (Count III, against Green only), Fraud (Count IV), Breach of Promissory Note (Count V, against Moneta Corp. only), Information Negligently Supplied to Guide Others (Count VI), Negligent Misrepresentations (Count VII).

**II.     Discussion**

    **A.     Standard of Law on Motions to Dismiss**

A court should only grant a motion to dismiss for failure to state a claim "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entn't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also* Fed. R. Civ. P. 12(b)(6). A motion to dismiss merely tests the sufficiency of the complaint; it does not decide the merits of the case. *See Wein v. American Huts, Inc.*, 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004). In general, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.

When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true and construe them in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche et al.*, 144 F.3d 732, 735 (11th Cir. 1998). As the Eleventh Circuit has noted, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) (quotations omitted). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the

complaint must allege facts sufficiently setting forth the essential elements of a cause of action. *See Wein*, 313 F. Supp. 2d at 1359.

Defendant seeks dismissal of Counts I, II, IV, VI, VII. The Court addresses each of these counts, in light of the principles stated above.

### B.     Count I - The Securities Act of 1933

Defendant Holmes argues that this count should be dismissed for failure to allege a statutory basis. This Court has already ruled that Plaintiff failed to state a claim under this count for failure to state what section of the Securities Act of 1933 under which he alleges a violation.

Holmes makes an additional argument that Plaintiff's claim was time barred. Although the complaint did not indicate the statutory basis for the claim, Plaintiff did indicate that he intended to pursue the claim pursuant to Section 12(1) of the Securities Act of 1933. There are two possible statutes that would limit the time in which Plaintiff could bring this claim. The first is 15 U.S.C. §77m, which provides that suit must be filed (1) within one year after the actual or constructive discovery of the misstatement or omission, or (2) within one year after the violation if filed under § 77l(a)(1) and (3) in no case more than three years after the security was offered to the public. The second is 28 U.S.C. § 1658, which provides that a litigant may bring a private cause of action no later than the earlier of either two years after discovering facts construing the violation or five years after the violation.

Although it does not appear that there is any discussion of this issue in the Eleventh Circuit, other courts have held that the longer limitations period does not apply to the Securities Act of 1933 § 11 claims because those claims do not require a finding of fraud. *In re Adelphia Communications Corp. Securities and Derivative*, 2005 WL 1679540 (S.D.N.Y. 2005)(courts in this jurisdiction have

5

uniformly concluded that Sarbanes-Oxley does not apply to § 11 claims) *In re Enron Corp. Securtieis, Derivative & "Erisa" Litigation*, 310 F.Supp.2d 819, 844 (S.D. Tex. 2004)(applied § 13 to § 11 claims); *Stephenson v. Deutsche Bank AG*, 282 F.Supp.2d 1032, 1064 (D.Minn 2003). Thus, it appears that those courts who have addressed this issue have unanimously ruled that the § 13 statute of limitations period applies to § 11 claims. Plaintiff states that he did not learn of the facts constituting the violation until late 2005 or early 2006. The one year statute of limitations period would therefore require Plaintiff to have filed the suit within one year of that time. Plaintiff did not do so by filing the suit on April 19, 2007. Thus, this count is time barred.

   **C.** **Count II - The Securities and Exchange Act of 1934 Section 10(b) and Rule 10(b)(5)**

   Section 10(b) of the Securities and Exchange Act of 1934 makes it "unlawful for any person . . . to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commissioner may prescribe." 15 U.S.C. § 78j (1997). Pursuant to this authority, Rule 10b-5 makes it unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstance under which they were made, not misleading." 17 C.F.R. § 240.10b-5 (1997). The Eleventh Circuit requires a plaintiff alleging securities fraud under Rule 10b-5 to plead (1) a false statement or omission of material fact; (2) made with scienter; (3) upon which the plaintiff justifiably relied; (4) that proximately caused the plaintiff's injury." *Robbins v. Koger Properties, Inc.,* 116 F.3d 1441, 1446 (11th Cir. 1997).

Allegations of security fraud under § 10(b) and Rule 10b-5 are subject to the heightened pleading standards of Federal Rule of Civil Procedure Rule 9(b). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to "ensure that the allegations of fraud are specific enough to provide sufficient notice of the acts complained of" and to "eliminate those complaints filed as a pretext for discovery of unknown wrongs. . . ." *Anderson v. Transglobe Energy Corp.,* 35 F. Supp.2d 1363, 1369 (M.D. Fla. 1999). The Eleventh Circuit has cautioned, however, that "Rule 9(b) must not be read to abrogate Rule 8 . . . and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directive of Rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims,* 755 F.2d 810, 813 n.3 (11th Cir. 1985).

Generally, in order to survive a Rule 9(b) challenge, the complaint must specify: (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making it (or, in the case of omissions, not making); (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, (11th Cir. 2001) (citing *Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

In December 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA") which heightens the pleading requirements for Rule 10b-5 claims. The Act goes further than Rule 9(b) by requiring a complaint alleging fraud to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation

regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

Holmes initially argues that this count should be dismissed because Plaintiff failed to allege that Holmes made a statement. In order to state a claim, Plaintiff must show not only that Holmes made a statement, but that the statement was false. Plaintiff only raises this claim against Holmes through his alleged participation in the circular. Thus, any of Holmes' arguments relating to the March 1 meeting are irrelevant.

In regards to the circular, Holmes raises an aiding and abetting argument. Holmes misunderstands the complaint. Plaintiff directs all liability against Holmes through his alleged preparation, compilation, review, and approval of the circular. Holmes seems to attribute this as an aiding and abetting liability, by arguing that a misstatement or omission must be oral and that therefore, since Holmes did not attend the March 1 meeting, he cannot be held liable.

It is true that aiding and abetting liability under § 10(b) is prohibited. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver N.A.*, 511 U.S. 164, 176 (1994). A misstatement or omission, however, need not be oral. Rather, a written document containing a misstatement or omission can, on its own, create liability under this statute if all of the elements are met. This is shown by the numerous cases, too numerous to even begin to list, that attribute violations of this section based on misstatements or omissions made in a prospectus or other written material. Accordingly, the complaint properly asserts a violation of this section against Holmes for his participation in the creation of the circular.

Second, Holmes alleges that Plaintiff failed to allege fraud with particularity as required by Rule 9(b) and the PSLRA. In this regard, Holmes argues that Plaintiff must have plead the who,

8

what, when, where, and why of each factual allegation.

In the complaint, Plaintiff explained that he attended a March 1, 2005 meeting. At that meeting, Green and Simmons provided him with a circular. He alleges that Holmes, as an officer or director of Moneta, prepared, compiled, reviewed and approved the information included in the circular with knowledge or recklessness as to the factual omissions and misrepresentations contained therein. Holmes intended to distribute the circular to the public to entice individuals to invest in the project. Plaintiff lists 16 specific misstatements and omissions contained in the circular.

Holmes first asserts that Plaintiff has impermissibly grouped multiple Defendants into one claim thereby making it impossible to determine which defendant engaged in what conduct in violation of Rule 9(b). There is an exception called the group pleading doctrine wherein group responsibility is presumed for misstatements or omissions in order to satisfy the Rule 9(b) requirements. In 2004, the Eleventh Circuit explained that other Circuits have struggled with the application of the group pleading doctrine after enactment of the PSLRA and have reached different results. *Phillips v. Scientific-Atlanta, Inc.*, 327 F.3d 1015, 1019 (11th Cir. 2004). Although the Eleventh Circuit may not have determined this issue definitively, many district courts in this Circuit have held that the doctrine does apply post-PSLRA. *In re Miva, Inc. Securities Litigation*, 2007 WL 809686 *5;); *In re Spectrum Brands, Inc. Securities Litigation*, 461 F.Supp.2d 1297, 1306 n.2 (N.D. Ga. 2006); *In re Immucor Inc. Securities Litigation*, 2006 WL 3000133 *8 n.5 (N.D. Ga 2006); *In re Friedman's, Inc. Securities Litigation*, 385 F.Supp.2d 1345, 1363 n.17 (N.D. Ga. 2005). Thus this Court holds that the group pleading doctrine does apply post PSLRA.

Defendant argues that Plaintiff has failed to allege that Holmes had daily control of the operations and therefore has failed to meet the requirements of the group pleading doctrine. Officers

and directors are presumed to have knowledge of and involvement in the day to day activities of a company. *In re Sensormatic Electronics Corp. Securities Litigation*, 2002 WL 1352427 *4 (S.D. Fla. 2002)(group pleading is allowed to impute ... corporate officers and directors, *who are presumed to have knowledge of and involvement in the day to day affairs of the company*)(emphasis added); *In re PSS World Medical, INC. Securities Litigation*, 250 F.Supp.2d 1335, 1347 (M.D. Fla. 2002)(the group pleading doctrine applies to officers "in the day-to-day management and control of the company."). Nonetheless, when read carefully, Plaintiff's allegations do not generally attribute the misrepresentations and omissions in the circular to all defendants; rather, Plaintiff has individually alleged preparation, compilation, review, and approval of the circular against each of the Defendants as incorporated by reference into each count.

Accordingly, this Court does not believe that Plaintiff engaged in group pleading. Although the allegations in each count allege activity perpetrated by "defendants," earlier paragraphs, that Plaintiff had incorporated into each count by reference, clearly outline each individual Defendant's alleged activity, when it occurred, and why that activity induced Plaintiff to invest in the project. This information, *in toto*, should provide ample notice to all Defendants. Moreover, simply because multiple defendants are alleged to have committed the same violations in the same way does not mean that combining their acts for efficiency purposes constitutes group pleading.

Since this Court does not believe that Plaintiff has proceeded pursuant to the group pleading doctrine, the only remaining argument that Holmes raises in regards to this count is Plaintiff's alleged failure to sufficiently allege scienter. Holmes argues that the scienter requirement is met by pleading facts that denote severe recklessness. *Bryant v. Avado Brands, Inc.*, 187 F3d. 1271, 1283 (11th Cir. 1999). Severe recklessness is "an extreme departure from the standards of ordinary care

... presenting a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been awarded of it." *Zuckerman v. Smart Choice Automotive Group, Inc.*, 2000 WL 339096254 (M.D. Fla. 2000).  Surely, Plaintiff's allegations that Holmes prepared, compiled, reviewed, and approved the circular, which represented that the 36 acres for the project had already been purchased, when Defendants knew in late 2004 that MREIG did not own that property, at the very least constitutes severe recklessness.  This is especially true since Plaintiff specifically alleged that Holmes did the above acts with "severe recklessness."

Holmes also appears to attack the relevance of the alleged offering circular because it contains the following disclaimer: "[t]his document is intended strictly for the purpose of providing information on the activities and structure of Moneta . . . This is not intended as a solicitation or prospectus."  In making this argument, it appears that Holmes invokes the "bespeaks caution" doctrine.  This rule states that it is possible for cautionary language in an offering document to negate the materiality of an omission or misrepresentation. *S.E.C. v. Merchant Capital, LLC*, 483 F.3d 747, 767 (11th Cir. 2007).  This doctrine has been codified in the safe harbor provision of the PSLRA. 15 U.S.C. § 78u-5; *Merchant Capital* at 768 n.18 (*citing*, *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 (11th Cir. 1999).  This rule protects parties who make projections about an investment where those projections are coupled with specific warning and cautionary statements listing the risks involved.  *Bryant* at 1276 n.7.

The "disclaimer" in this case, however, did nothing to warn anyone of any dangers inherent in the investment.  On the contrary, the "disclaimer" specifically stated that the document was provided "for the purpose of *providing information* on the activities and structure" of the project. (emphasis added).  The only "cautionary" language was in fact designed to protect those distributing

11

the circular. Accordingly, Plaintiff is correct to rely on the circular as a source of alleged misrepresentations or omissions.

Finally, Holmes argues that Plaintiff filed this claim outside of the statute of limitations period. Effective July 30, 2002, Sarbanes-Oxley extended the limitations period for filing Section 10(b) and Rule 10(b)(5) claims. 28 USC § 1658, provides that a litigant may bring a private cause of action no later than the earlier of either two years after discovering facts construing the violation or five years after the violation. Discovery occurs when one has inquiry or actual notice of a violation. *Theoharous v. Fong*, 256 F.3d 1219, 1228 (11th Cir. 2001). Courts apply an objective standard to determine if an individual had inquiry notice of a claim. "Inquiry notice is the term used for knowledge of facts that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed." *Id*.

Defendant Holmes argues that Plaintiff was put on notice no later than December, 2005. Plaintiff filed this claim in April 2007. Since Plaintiff had two years in which to file this claim, according to Defendant's own assessment of when notice could have occurred, the action was timely filed.

### D.     State Law Claims

Holmes finally argues that Plaintiff's fraud claim should be dismissed because Florida law requires a plaintiff to plead actual knowledge. In paragraph 25 of the complaint, Plaintiff alleges that Holmes acted "with knowledge." Plaintiff incorporated this paragraph by reference into count IV. Thus, by Holmes' own recitation of the law, Plaintiff has stated a claim.

### III.    Conclusion

After carefully considering the motion and the pertinent portions of the record,, it is hereby,

ORDERED and ADJUDGED that Defendant Holmes' Motion to Dismiss **[DE 27]** is **Partially Granted** in the following respects: Count I is dismissed, with prejudice. The Motion is otherwise **DENIED**.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 24 day of September, 2007.

        /s/ Kenneth L. Ryskamp
    KENNETH L. RYSKAMP
    UNITED STATES DISTRICT JUDGE

Copies provided:
All counsel of record