UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80347-CIV-RYSKAMP/VITUNAC

THOMAS H. SIDES,

      Plaintiffs,

v.

NEAL E. SIMMONS, RODNEY
N. GREEN, FRANK L. HOLMES,
RICHARD E. RODRIGUEZ, and
MONETA CAPITAL
CORPORATION, INC.,

      Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION TO STAY**

THIS CAUSE comes before the Court upon Defendants Simmons and Moneta's Motion to Stay **[DE 51]**, filed on August 23, 2007. Plaintiff responded **[DE 52]** on September 10, 2007. Defendants never replied. The motion is now fully briefed and ripe for adjudication.[1] In this motion, Defendants asks this Court to enter a stay in this case, as to them alone, due to similar litigation pending in state court.

**I.  Introduction**

This is a civil action brought by Plaintiff against Defendants alleging both state and federal causes of action stemming from Plaintiff's investment in securities offered by Defendants. Accordingly, this suit is brought pursuant to this Court's federal question jurisdiction. Venue is properly with this Court as all of the Defendants reside in the Southern District of Florida. The

---

[1] Although this motion was filed before Plaintiff filed his amended complaint, the issues raised in this motion are still viable and are therefore discussed below.

following facts are based on Plaintiff's allegations contained in his Complaint **[DE 1]**.

Rodney Green introduced Thomas Sides to Neal Simmons on March 1, 2005 during a meeting to discuss Sides' potential investment in a large development project in the Bahamas called the Lake Heights Development. Simmons and Green stated that all of the investments in the project had been made through their corporation, Moneta Corp., and that they were seeking new investors to increase Moneta Corp.'s interest in the Lake Heights project and in a Bahamian company called MREIG.

During that March 1 meeting, Green and Simmons told Sides that the project entailed a 36 acre gated residential housing development overlooking Lake Kilarney. This project would include 118 single family homes and 68 condominium units. Green and Simmons told Sides that MREIG already owned the 36 acre site, which had been cleared, infrastructure construction and sales of lots and residences had already started. Green and Simmons stated that Moneta Corp. sought additional investors to raise money to finalize the project's infrastructure development. Accordingly, the investment was a "can't miss" for two reasons: first, there is a low supply and high demand for quality housing in the Bahamas; and second, there was already an insurance bond or title insurance on the property and therefore the investor's would be financially protected from loss. In addition to the above representations, all Defendants created and Green and Simmons provided Sides with a copy of a Moneta Offering Circular.

Plaintiff alleges that the circular contained material misrepresentations such as overstating the investment return, demand for housing, safety and profitability of the project, stating that infrastructure had already been constructed on the project site, and that the investment was secured and approved by the Bahamian government. Additionally, Plaintiff alleges that theCircular omitted

material facts making it misleading such as: failing to list any risk factors relating to the property ownership, failing to disclose any details regarding agreements or contracts entered into pursuant to the project, Moneta Corp. and MREIG's default on several investor's promissory notes, failure to pay vendors, and information regarding how future investments would be used.

Sides claims that he relied on the statements Green and Simmons made at the May 1 meeting and the information presented in the circular. As a consequence, he invested a total of $250,000 in Moneta Corp. before the parties adjourned from the meeting.

Later, Sides received two letters signed by Simmons and dated March 2, 2007. The first letter guaranteed the return of his investment with a minimum return. The second letter guaranteed that Moneta Corp. had been issued title insurance for the project.

Months later, Sides began to have difficultly obtaining progress and financial information on the project from Defendants. In September 2005, Moneta Corp. defaulted on the loan Sides gave to the company as part of his investment. It was after this time that Sides discovered that Moneta Corp. and MREIG never owned the 36 acre site comprising the Lake Heights Development. Upon further investigation, Sides discovered that Defendants knew in late 2004 that they did not own the site and that obtaining title insurance was impossible. In fact, on September 23, 2005, Simmons wrote a letter agreeing that he did not own the site and made a new purchase offer.

Based on the above facts, Plaintiff alleges seven counts against the Defendants alleging violations of: the Securities Act of 1933 (Count I), the Securities and Exchange Act of 1934 Section 10(b) and Rule 10(b)(5) (Count II), the Florida Securities Laws (Count III, against Green only), Fraud (Count IV), Breach of Promissory Note (Count V, against Moneta Corp. only), Information Negligently Supplied to Guide Others (Count VI), Negligent Misrepresentations (Count VII).

## II.     Discussion

This amended complaint, and the complaint in Florida state court, differ as to these Defendants in the following respects: this amended complaint adds claims for information negligently supplied for the guidance of others and a count for negligent misrepresentation and omits a claim for Florida securities violations. The complaints raise similar claims as to the federal securities violations,[2] one count of fraud and one count of breach of promissory note against Moneta. Thus, Defendant urges this Court to issue a stay pursuant to the *Colorado River* doctrine regarding the similar claims presented in Counts 1, 2, 4, and 5. These counts represent all but one of the counts raised against these Defendants in the state court litigation, the claim for Florida securities violations.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and may only be allowed in "exceptional circumstances" where abstaining "would clearly serve a countervailing interest." *Id*. Abstention under the *Colorado River* doctrine is appropriate when "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," favor deferring to the concurrent state court proceeding. *Id*. at 817-18.

Accordingly, the *Colorado River* court outlined a six prong balancing test that judges must follow when determining whether abstention is appropriate: (1) whether a state or federal court has retained jurisdiction over the property; (2) whether the federal forum is inconvenient; (3) whether there is potential for piecemeal litigation; (4) whether the state or federal court obtained jurisdiction

---

[2]Count one is brought pursuant to the Securities Act of 1933 and count two is pursuant to the Act of 1934 § 10(b).

first; (5) whether state or federal law is at issue; and (6) whether state court can adequately protect the parties' rights. *Colorado River* at 817-18; *Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 16-26 (1983). The combined weight of all six factors must be considered against the fact that abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and may only be allowed in "exceptional circumstances" where abstaining "would clearly serve an important countervailing interest." *Colorado River* at 813. This Court believes that this is such a case.

Additional guidance has been given when considering each of the *Colorado River* factors. For example, in analyzing the first factor, a court must consider the court's jurisdiction over the property, not just where it is located. The second factor asks courts to consider the physical proximity of the federal forum to the evidence and witnesses. Factor three requires a court to analyze whether the case will lead to piecemeal litigation that is abnormally excessive or damaging. Fourth, a court must examine how much progress has been made in the state and federal cases; of course, the balance weighs in favor of the forum in which the most progress has already been made. Fifth, the court must consider whether state or federal law applies. When federal law is at issue, the balance swings against abstention; conversely, when state law is at issue the balance favors abstention. An even stronger argument can be made in favor of abstention when the state law issue is complex. Finally, the sixth factor hinges on whether one of the fora is inadequate to protect the parties' rights. *Ambrosia Coal and Construction Co. v. Pages Morales*, 368 F.3d 1320, 1332-34 (11th Cir. 2004)(holding that, in that instance, abstention was not appropriate).

**Factors One and Two**

Here, neither the federal nor the state courts have retained jurisdiction over any property.

Likewise, the federal forum in the Southern District of Florida is just as convenient as the state forum in the Fifteenth Judicial Circuit in and for Palm Beach County. Thus, the first two factors provide little guidance.

**Factor Three**

The danger of piecemeal litigation is great as the issues being litigated in state court mirror those issues being litigated in federal court. Granted, Plaintiff has added both new claims and new defendants to this litigation, nonetheless, the issues in dispute here are identical to those already raised in state court. To allow litigation in this Court, while the same litigation is pending in state court, will require twice the resources: two discoveries, two trials and possibly two conflicting decisions based on the same evidence. *See*, *Allied Machinery Service Inc., v. Caterpillar Inc.*, 841 F.Supp. 406, 408 (S.D. Fla. 1993). This is unnecessary and excessive.

**Factor Four**

Plaintiff filed his complaint in state court on September 15, 2006 and waited until April 19, 2007 to file this similar action in federal court. Thus, the state court obtained jurisdiction just over seven months before Plaintiff filed the instant action. In that time, the Defendants have answered the state claim, the parties have exchanged and answered interrogatories, Defendants have produced documents pursuant to document requests and depositions have been taken. In this case, Defendants filed a motion to dismiss and, after this Court's ruling on that motion, Plaintiff filed an amended complaint, to which the Defendants answered. According to this Court's Scheduling Order, the deadline for amended pleadings just passed a few days ago, on November 5, 2007. As such, discovery is in its infancy. Thus, not only did the state court first obtain jurisdiction, but the case in state court has progressed far beyond this one.

Moreover, to permit both state and federal suits to go forward would lead to forum shopping by encouraging Plaintiff to simply choose a second court if he becomes unhappy with the first. Deferring jurisdiction to the court where the case was first filed protects the neutrality of the federal system and is consistent with long-standing judicial notions of issue and claim preclusion. *See*, James C. Rehnquist, *Taking Comity Seriously: How to Neutralize the Abstention Doctrine*, 46 Stan. L. Rev. 1049, 1068 (1994). It would be illogical to give full faith and credit to the judgments of other courts while encouraging a race to judgment by permitting two suits involving substantially the same parties and issues to go forward.

**Factor Five**

Both state and federal laws are at issue. Important here, however, is that Plaintiff chose to raise the federal claims first in state court and then waited over six months to raise those same claims, in a separate federal case. Plaintiff's primary argument against abstention hinges on the fact that one of the federal claims, originally raised in state court, can only be considered in federal court: the second count of the federal claim brought pursuant to § 10(b) of the Securities Exchange Act of 1934.

Section 27 of the Act grants Federal District Courts exclusive jurisdiction over "violations of this title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder." 15 U.S.C. § 78aa. Plaintiff is correct to note that the Eleventh Circuit has employed a particularly cautious approach to the *Colorado River* doctrine. *See*, *Ambrosia Coal and Construction Co. v. Pages Morales*, 368 F.3d 1320, 1332-34 (11th Cir. 2004). Notwithstanding, other circuits have held that staying a proceeding pursuant to *Colorado River* where a 10(b)claim has been raised is an abuse

7

of discretion. *Medema v. Medema Builders, Inc.*, 845 F.2d 210, 212-15 (7th Cir. 1988). Thus, this Court agrees that it cannot stay the 10(b) claim.

But the exclusive grant of federal jurisdiction does not flow to the other federal claim nor to the state law claims. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 514 (1974). Since Plaintiff chose to first bring those claims in state court, this Court must honor that choice and let the state court adjudicate those claims.

**Factor Six**

The state can adequatly protect parties' rights in that Plaintiff has raised two state claims and chose to raise the federal claim in state court. This state court is specifically entrusted to decide issues of state law. As to claim one, for violations of the Federal Securities Exchange Act of 1933, since there is no exclusive grant of federal jurisdiction, and since Plaintiff originally entrusted the state court to protect its federal right and Defendants chose not to remove the action to federal court, this Court is confident that the state court will adequately protect both parties rights.

**III.  Conclusion**

After carefully considering the motion and the pertinent portions of the record,, it is hereby,

ORDERED and ADJUDGED that  Defendants' Motion to Stay **[DE 51]** is **GRANTED**. This case shall be stayed as against Defendants Simmons and Moneta in Counts 1, 4 and 5. The case shall proceed as previously scheduled in all other respects.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 7 day of November, 2007.

/s/ Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

Copies provided:
All counsel of record